This next case is case number 4-13-0752, People v. Radley-Monson, and present for appellant is Martin Ryan, and for appellee is Allison Paige Brooks. Counsel, you'll notice that Justice Connect is not present here for oral argument. He had to attend to another matter. Justice Connect will be a fully participating member of the panel deciding this case, and he will have the benefit of the recorded oral argument to listen to. So we will proceed with argument. Mr. Ryan, are you ready? All right, you may proceed. Mr. Ryan May it please the Court, Counsel, I'm Martin Ryan from the Office of the State Appellate Defender, and I represent Radley-Monson. In this case, I raised three issues in the brief. The states conceded the third issue concerning restitution, and it was my intention in this argument to concentrate on the second issue, but of course I'll answer questions about any of the arguments I raised. The crucial background of this case is that in early 2012, 19-year-old Radley and three of his same-age peers, two of which were also too young to be drinking alcohol, learned that they could go to the Danvers Y and drink generally without being carded. On the night of the accident, Radley unfortunately had been tabbed the designated driver. As they left the Danvers Y with four young men, according to the state's accident reconstruction experts, he was not speeding, but he lost control of the car, which caused it to flip upside down, and a result of which Radley's good friend Nicholas Kaufman was killed. About two hours after the crash, Radley's blood alcohol dropped. His BAC was around .72. At the time of the accident, again, Radley was 19 in high school. He had been a team captain, I think, on the wrestling team. He had won sort of academic honors for scholar athletes. He was employed. He had no prior convictions. Personally, he endured the death by suicide of two other childhood friends, and as the letters on his behalf showed, he helped others in need. It was sort of a general practice. Radley pleaded guilty in this case and took responsibility. There was no plea taken and remorseful over causing the death of a third childhood friend. He was allowed to attend Nick's funeral. He visited, according to Radley's mother, he visited Nick's grave and the crash site often, and the PSI indicates that he has a tattoo of Nick's initials on one of his arms. In short, Radley was a good kid who made a terrible, tragic mistake. When you are convicted or plead guilty to AG DUI that causes a fatality, it's very, very difficult to get probation. The legislature has made it so in its judgment that probation should only be granted in extraordinary circumstances. I believe that that specific statute that makes it harder to get probation was in play here, which is why Radley did not get probation. I think perhaps under an ordinary standard, he probably would have, but in any event, so that leaves us with a range of three to fourteen years in prison. Radley, of course, not only didn't get probation, he didn't get three or four years. He got six, which is twice the minimum, and the court refused his request for impact incarceration, which I otherwise tend to call boot camp. As the court said, that Radley was, quote, not the type of defendant who would benefit, unquote, from boot camp because, quote, he has a lot of time for him, unquote. The court further elaborated later in the proceedings, I believe at the reconsideration phase, that he, that the judge believed that boot camp was for people who had been in gangs or had otherwise had a long history of disciplinary problems. So that in short, while Radley was not quite good enough to get probation, he was more or less too good to get boot camp. If the trial judge had simply said, I don't think boot camp would be appropriate in this case, would you be standing here making the argument that you are in regards to the trial court's failure to consider boot camp? I would be arguing that it was error, because I think that even if this court does not agree that, that the circuit court added basically another layer to the qualifications required for boot camp by saying, you have to have been in a gang or have a long juvenile record or something like that, Radley is the perfect kid for boot camp because he, you know, as the PSI shows, he had a high, he was a high risk for alcohol abuse evaluation when he was in high school, which seemed to be when he was thriving, when he was doing great as a kid, great as a school, great things, was when he had those, was in those high discipline sports like football and wrestling. And I think, and also the, the boot camp program also has substance abuse treatment as one of its goals besides life skills and release preparations along with the military formation stuff and education. It's more than just discipline. There's a lot more to it. And one of the things, again, is substance abuse. And so Radley, between basically having, clearly having an alcohol problem and having thrived in high school, even if the judge had merely said, I'm not going to give boot camp in this case, and had not elaborated a single thing about gang membership or long discipline, I still think that would be wrong. Essentially what you're saying then is that there is no discretion in this case for the judge. The judge had to give boot camp. No. I'm saying that there is discretion and the judge didn't exercise it. I'm sorry. In my hypothetical, I simply indicated that the court stated, I don't believe the defendant is a good candidate for boot camp. And denied boot camp. And I asked whether you'd be making the same argument, didn't I here? So, I mean, it is a discretionary call on the part of the trial court, right? Yes. My argument is, my argument, and to clarify, my argument in this case is twofold with respect to the boot camp issue. The first is that the gang membership slash disciplinary thing is effectively an extra qualification. That's like an improper factor. The secondary argument is that even if this court does not agree with that, that just on a straight up abuse of discretion standard, considering Radley as an individual who thrived with the high discipline sports programs, who clearly has a substance abuse problem in the form of alcohol, and who meets all the other qualifications, he seems the ideal candidate for boot camp. And so, but that's sort of a secondary argument, which that's why I was answering that way. So had the judge merely said nothing about gang membership and just said, I'm not giving Radley-Monson boot camp, and nothing else, that's how I got to this. So again, I believe that this case, as a reference to my brief, is similar to Miller, which is a second district case where a judge refused to give first offender probation, largely because the judge believed that first offender probation was reserved for those who pleaded guilty, right plea agreements, and instead gave that particular defendant ordinary probation. And on the appeal, the second district said that Ms. Miller in that case had met the list of qualifications for first offender probation the way Radley here has met the list of qualifications for boot camp. Well, Judge Lawrence didn't set out any prohibitions in his sentencing order. Well, I can't give him boot camp or I can't give him probation because I've got this idea that this crime deserves more time. He never said anything like that. He did not. No, he did not. Yeah, in my opinion, there's more than one way a court can err, and the court did not do that. The court did not say anybody who gets an AG DUI that causes a fatality should never do that. He doesn't have a personal favorites list about, you know, if you're convicted of this offense, automatically you're going to DOC for X amount of years. He does not have that. I agree that Judge Lawrence did not have that particular offense related thing. I think he added an extra, I think he had a different type of one, which is that you had to be a gang member or a long history of getting in trouble at school or juvenile offenses in order to be the kind of person who he would give boot camp to. And it doesn't, it's not on the list. And so, I realize it's a different type of thing, it's not on the list, it's an analogy. And of course, the remedy, which would be the remedy on the boot camp issue, is a new sentencing hearing in which the judge would consider boot camp, you know, without reference to the improper factor. That's assuming that this court does not reduce Radley's sentence to four years, as I had requested in the first argument, which was a straight up excessive sentence argument. If there are no further questions, thank you, Your Honor. Thank you. Ms. Brooks? Good afternoon, Your Honors. May I please support and counsel? My name is Allison Paige Brooks, appearing on behalf of the people. The state would distinguish the Miller case cited in the defendant's brief because that was a case where the judge did have a personal policy of denying first offender probation unless the defendant had some sort of plea agreement. In this case, this was simply the trial court view to disconnect between the defendant's needs and what were the intended perceived benefits of boot camp in terms of instilling discipline in cases in offenders who had histories of discipline problems. That would be the ideal candidate for boot camp, not this defendant. So the state does dispute the defendant's argument that this would be an abuse of discretion because he considers himself to be ideal for impact incarceration. Even though boot camp does have some sort of component of substance abuse counseling and the defendant has an alcohol problem, does it make him ideal for boot camp and does it not make the judge's decision to decline the recommendation for impact incarceration and abuse of discretion? Simply deciding under the facts of the case that the defendant is not the type of person who would benefit from boot camp does not mean that the judge had acted arbitrarily in denying the recommendation for impact incarceration. Simply the defendant's position is whatever the reason would be that the judge gives for would constitute adding an additional requirement or what he terms an extra qualification to the list of the statute. That's not the case. What happens is there's a list of requirements, if the defendant meets it, then the judge gets to exercise discretion. So essentially, whenever the judge exercises discretion to withhold the impact incarceration recommendation should not be viewed as arbitrary or simply adding an extra requirement to the statute. Here, the disconnect was the fact that the defendant had a solid upbringing and all the recommendation letters showed that he was possessed of self-discipline in pretty much every matter except for his ability to control his alcoholism. The fact that there was, with respect to the six-year sentence being excessive, there was evidence of aggravation in the record in the form of the defendant's lack of honesty. It seemed like what the argument was made by the prosecutors was that the defendant was simply jumping through the hoops and gaming the system, lying about, for example, how long his alcohol consumption had lasted in order to minimize the amount of treatment. And even after undergoing pastoral counseling and sessions for his alcoholism at the agency where he was receiving substance abuse treatment, then he still was consuming alcohol legally underage and so the fact that he was doing so even after being involved in a serious accident in which one of his friends died because of his alcohol consumption certainly shows a shocking lack of judgment on his part. That is definitely aggravation. Even though he does have a substantial amount of mitigation in the record, what the defendant essentially requires to misdo is something that's inappropriate, which is to overrule the trial court's weighing of factors and substitute this court's judgment for that of the trial court. So for that reason, the six-year sentence was not an abuse of discretion. It was not so unreasonable that no reasonable person would agree with it. So this court should defer to the court's exercise of discretion and also find that impact incarceration was not arbitrarily or unreasonably refused. So for those reasons, the state requests this court to affirm the judgment and I'm willing to entertain any questions. I have a question. That is along the lines of the Miller argument that is being made as to whether or not the trial court had a personal policy in regards to when to give impact incarceration as a sentence. Let's say you have a Judge A who says, I will only consider boot camp for individuals who are members of gangs versus Judge B who says, I typically don't see any benefit in sentencing an individual to boot camp if they aren't involved in gangs. This defendant is not involved in a gang, therefore I am not going to sentence him to boot camp. Are the two equivalent? No, Your Honor. The first hypothetical you mentioned appears to be much closer to the sort of arbitrary personal policy to say that boot camp would not be, a recommendation would not even be considered unless the defendant met like an extra requirement, for example, being a member of a gang. However, taking all the facts of the case, viewing the needs of the defendant and viewing the intended penological goals and benefits of the impact incarceration program and comparing the two and then making a discretionary judgment as to whether that is something that should be recommended in the sentence, that's the type of discretionary call that the court does make. The second hypothetical would be a situation where the Judge is not erring simply by looking at the intended benefits of the program, considering whether the defendant would be within the scope of people that would be most likely to benefit from the program versus simply saying, I'm not even going to consider whether this defendant should be considered for the program because of the fact that he lacks a certain characteristic. That's different. Failure to consider is more of the arbitrary refusal situation, whereas here there was no failure to consider, there was consideration. There was discretion exercised, but the discretion was exercised in a manner the defendant doesn't like, so he's characterizing it as an arbitrary refusal when it really was not. That answers your question. Thank you, Your Honors. Any other questions? Thank you. All right. Thank you. Mr. Ryan? In response to your hypothetical, Your Honor, I would say that I could see a distinction between the two in that one appears to be a blanket rule, the first appears to be a blanket rule, and the second appears to be a statement based on the judge's years of experience, whereas perhaps prior sentences to boot camp have not worked out with certain types of defendants in the experience of the judge or the judge has heard perhaps from other judges that it hasn't worked out. In this case, we don't have that. He's not the kind of person because he has too many things going for him. Essentially, he's too good for boot camp. But on the other hand, we have that boot camp is also for people who have substance abuse problems. And as the State, which in her argument accused Raleigh of possibly gaming the system and jumping through hoops and lying about his alcohol, and I would point out that if he's lying about his alcohol use, that's actually more of a not having a disciplinary handle on one's alcohol problems, and it's an indication for boot camp, even if it might be aggravating. Also, I would note that because there was factually, in this case, a paperwork delay in Raleigh getting actual professional substance abuse treatment, apparently countermeasures wanted a specific BAC that was taken at the time, and there was none. It was only taken a couple hours later, and that particular one happened to be below the .08, and so I think they had trouble. There was a delay in accepting him in because countermeasures didn't like the paperwork that was initially tendered. And because of that, for the first few months or at some point after the offense, Raleigh doesn't have professional substance abuse counseling. He has whatever he gets from his local pastor, which is all he can get at the time. So I think he was also without professional guidance at the time he was getting into trouble and dealing with grief and now having killed a good friend of his. Also, I would also note that during the same time, he was also invaluable in helping the Danvers Y get its liquor license pulled by being ready, willing, and able to testify at the Liquor Commission hearing, as is evidenced in the PSI by the letter written by the Assistant State's Attorney for the Civil Division, giving Raleigh credit for basically the Danvers Y rolling over. To clarify something the State argued, my argument is not whatever reason there is for denying boot camp equals an extra bad qualification. It's saying that it's for gang members or people with long disciplinary records, rather than looking to the person as a whole. I don't think that was done here because, again, Raleigh has a terrible substance abuse problem and he needs the thing and he fits all the other qualifications. And aggravated DUI is not one of the offenses excluded. So the legislature did not intend that anyone who commits an ag DUI be excluded. I have nothing further, Your Honors, if you have any other questions. I've got a comment for the both of you. This case, you know, and we've had a number of cases like this in terms of the appropriate sentence to be imposed. There is, on one side, judges who are very easy markers, and on the other side, judges who give out probation like candy. On the other end, the hard guys that just always deal out the max or close to it. And cases like this are extraordinarily difficult because, and Judge Lawrence is a good judge, and the difference between a three-year sentence and a six-year sentence is huge to the defendant. And the question in my mind is, well, would a three-year sentence be sufficient? You know, that's the wake-up call. I mean, when you walk into the penitentiary and hear the doors clang, that's your wake-up call. It doesn't need to be six years of it. And 85% as well for this particular offense. Yeah. So, I mean, these are just really difficult things. And the reason is, we have, in my opinion, perhaps too much wider range of sentencing possibilities for particular offenses. It's bothersome to me. All right, thank you both. This case will be taken under advisement, and a written disposition shall issue.